IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| LEGISTREAN PURVIS-CHAPMAN, | HONORABLE JEROME B. SIMANDLE |
| Plaintiff, | |
| v. | Civil Action No. 14-4252 (JBS/AMD) |
| MARK J. SILVERSTEIN and DANIELLE SNEATHEN, | **MEMORANDUM OPINION** |
| Defendants. | |

**SIMANDLE, Chief Judge:**

Plaintiff Legistrean Purvis-Chapman, pro se, brings this case against Mark Silverstein and Danielle Sneathen, alleging that Defendants, who are both employees at Glassboro High School where Plaintiff worked until June 2015, discriminated against her on the basis of race, disability, and age, in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e et seq.; the Americans with Disabilities Act of 1990 ("ADA") 42 U.S.C. § 12101, et seq.; and the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621 et seq. Presently before the Court is Defendant's Second Motion to dismiss Plaintiff's Amended Complaint under Fed. R. Civ. P. 12(b)(6) for failure to state a claim. [Docket Item 31.] Having reviewed Plaintiffs' Amended Complaint, the Court agrees with Defendants that it fails to state a cognizable legal claim and must be dismissed. The Court finds as follows:

1.    Plaintiff was employed as a teacher at Glassboro High School for over 40 years, and was suspended with pay on June 4, 2014. She filed her initial Complaint on July 3, 2014, against Mark Silverstein, Superintendent of Glassboro Public School District, Danielle Sneathen, Principal of Glassboro High School, and Danielle Sochor, the Director of Curriculum, Special Education, and Personnel, shortly after the suspension. The original Complaint was long and contained unintelligible sentences and non-factual statements, and the specific allegations were difficult to decipher. Defendants moved to dismiss the pleading, arguing that the allegations were wholly insufficient to support any inference of discrimination. Specifically, Defendants noted that despite Plaintiff's multitude of complaints of how she perceived she was being treated, there were no allegations to suggest that that Defendants acted out of discriminatory animus. Before the Court could rule on Defendant's motion, Plaintiff filed this Amended Complaint against Mark Silverstein and Danielle Sneathen.[1] Like Plaintiff's original pleading, the new Complaint contains

---

[1] Because Plaintiff appears to have dismissed Danielle Sochor as a defendant in her Amended Complaint, and because there are virtually no facts about Sochor in the new pleading, the Court will dismiss all claims against her.

allegations that are sometimes difficult to follow, but the relevant facts are summarized below.[2]

2.    Plaintiff alleges that she has a permanent disability, which appears to stem from an injury she suffered four years ago due to a student's unspecified "actions before the entire class in room A-122." (Am. Compl. ¶ 7, 11.)

3.    Plaintiff's general complaint against Silverstein is not entirely clear, but she seems to allege that Silverstein was aware of Plaintiff's disability and retaliated against Plaintiff for it. (Id. ¶ 7.) She states that she notified Silverstein in writing "of past discriminatory Civil Rights violations due to age, race and disability on Glassboro School Property." (Id. ¶ 9.) She then alleges that Silverstein "didn't keep his promise of change, and the Civil Rights violations against plaintiff continued after defendant had opportunity to review plaintiff['s] permanent disabilities in files." (Id. ¶ 13.) She alleges Silverstein began to ignore Plaintiff's emails and

---

[2] Plaintiff filed her Amended Complaint [Docket Item 25] fifteen days after Defendants filed their first motion to dismiss. Because Plaintiff's Amended Complaint was filed as of right, see Fed. R. Civ. P. 15(a)(1)(B), the Court dismissed Defendants' motion as moot, noting that Plaintiff's Amended Complaint rendered her initial Complaint "of no legal effect," and ordered Defendants to respond to Plaintiff's amended pleading. [Docket Item 30] See West Run Student Hous. Assocs., LLC v. Huntington Nat'l Bank, 712 F.3d 165, 171 (3d Cir. 2013). The facts below are taken from Plaintiff's Amended Complaint.

complaints "as the harassment, bully, threats, and intimidation continued." (Id.)

4.    She then alleges that Silverstein shared a "data driven" PowerPoint presentation with school employees, which noted that African American males were the cause of low New Jersey test scores, and that African American females suffered low test scores by helping them. She alleges that Silverstein had a "big idea," which came from an article in the Gloucester County Times, and that he "was seeking to prove defendant had discovered the problems in the Glassboro Public Schools by 'Labeling African American as dumb.'" (Id. ¶ 14-16.)

5.    In May of 2014, Defendant Danielle Sneathen "threatened plaintiff after she had fabricated a few things." Plaintiff complained to Silverstein, but her emails to Silverstein were ignored. Silverstein then suspended Plaintiff from teaching on June 4, 2014, which Plaintiff alleges was retaliation. (Id. ¶ 20.) Silverstein called Plaintiff's behavior "erratic and ranting," and banned her from Glassboro school activities. (Id. ¶¶ 17-18.) Plaintiff notes that Silverstein "wrote primary documents accusing plaintiff of erratic behavior, ranting on fabrication and feasibly hearsay information." (Id. ¶ 29.)

6.    Plaintiff also pleads that Silverstein "knowingly allowed plaintiff to continue to be victimized and failed to

give plaintiff relief from the discriminatory acts." (Id. ¶ 32.) Beyond the general allegations of being "harassed" and "bullied" by unnamed individuals, Plaintiff alleges that a Board of Education employee's son threatened to have Plaintiff fired and kill her, and drew pictures of Plaintiff, but that Silverstein failed to act. (Id. ¶ 32.) She also complains that another teacher accosted her in the halls and put a gun to her head, but that the teacher suffered no consequences after telling the administration that it was a water gun. (Id. ¶ 31.)

7.   A motion to dismiss under Fed. R. Civ. P. 12(b)(6) may be granted only if, accepting all well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the plaintiff, a court concludes that plaintiff failed to set forth sufficient facts to state a claim for relief that is plausible on its face. Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007); Fleisher v. Standard Ins. Co., 679 F.3d 116, 120 (3d Cir. 2012). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). However, legal conclusions are not entitled to the same assumption of truth, and "[a] pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." Id. To determine if a complaint meets

5

the pleading standard, the Court must strip away conclusory statements and "look for well-pled factual allegations, assume their veracity, and then determine whether they plausibly give rise to an entitlement of relief." Bistrian v. Levi, 696 F.3d 352, 365 (3d Cir. 2012) (internal quotation marks omitted). The Complaint must contain "'enough factual matter (taken as true) to suggest' the required element." Phillips v. County of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008) (quoting Twombly, 550 U.S. at 550 U.S. at 556).

8.    Because Ms. Purvis-Chapman is a pro se plaintiff, the Court construes her Complaint liberally. Alston v. Parker, 363 F.3d 229, 234 (3d Cir. 2004); Dluhos v. Strasberg, 321 F.3d 365, 369 (3d Cir. 2003). If a complaint is vulnerable to dismissal, "a district court must permit a curative amendment, unless an amendment would be inequitable or futile." Phillips v. County of Allegheny, 515 F.3d 224, 236 (3d Cir. 2008). If the pleading "is so vague or ambiguous that the party cannot reasonably prepare a response," the Court may direct Plaintiff to provide a more definite statement. Fed. R. Civ. P. 12(e).

9.    Title VII prohibits an employer from discriminating against an employee on the basis of an employee's race, color, religion, sex, or national origin, 42 U.S.C. § 2000e-2(a);[3] the

---

[3] Title VII generally provides that it is "an unlawful employment practice for an employer ... to discharge any individual, or

ADA prohibits discrimination in employment on the basis of disability, 42 U.S.C. § 12112;[4] and the ADEA prohibits discrimination in employment with respect to "compensation, terms, conditions, or privileges of employment, because of such individual's age," 29 U.S.C. § 623(a).[5] In order to state a claim of discrimination under these statutes, a plaintiff must generally show that (1) she belongs to the class of individuals protected by the statute; (2) she suffered an adverse employment action despite being qualified for the position; and (3) the adverse employment decision was a result of discrimination. See Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 141 (2000) (discussing discrimination under the ADEA); Sarullo v. U.S. Postal Serv., 352 F.3d 789, 797 (3d Cir. 2003) (citing McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973), and discussing standard for discrimination under Title VII); Shaner

---

otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1).

[4] The ADA states that "[n]o covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a).

[5] The ADEA generally provides that it is unlawful for an employer "to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1).

v. Synthes, 204 F.3d 494, 500 (3d Cir. 2001) (discussing
discrimination under the ADA and noting that plaintiff must show
that she was otherwise qualified to perform the essential
functions of the job, with or without reasonable
accommodations). In particular, the third prong requires the
plaintiff to demonstrate that "the protected trait . . .
actually motivated the employer's decision." Hazen Paper Co. v.
Biggins, 507 U.S. 604, 610 (1993) (discussing liability in the
context of ADEA). "Whatever the employer's decisionmaking
process, a disparate treatment claim cannot succeed unless the
employee's protected trait actually played a role in that
process and had a determinative influence on the outcome." Id.
Although a plaintiff "'need not plead law or match facts to
every element of a legal theory,'" Krieger v. Fadely, 211 F.3d
134, 136 (D.C. Cir. 2000) (quoting Bennett v. Schmidt, 153 F.3d
516, 518 (7th Cir. 1998))), he must present "enough facts to
raise a reasonable expectation that discovery will reveal
evidence of the necessary element[s]" of a cause of action.
Phillips v. Cnty. of Allegheny, 515 F.3d 224, 234 (3d Cir.
2008).

     10.  Defendants argue that Plaintiff has failed to state a
plausible claim for relief, because her allegations, even when
interpreted liberally, fail to raise an inference of
discrimination on the basis of her membership in any one of the

protected classes under Title VII, the ADA, and the ADEA. The Court readily agrees.

11.  First, Plaintiff has not clearly alleged that she is part of a protected class. Interpreting her Complaint liberally, the Court may infer that Plaintiff, having taught at the school for over 40 years, falls within the class of older workers as defined by the ADEA. See 29 U.S.C. § 631. Although Plaintiff does not specify her race, the Court may also infer, given her assertions regarding Silverstein's comments about African Americans, that Plaintiff is African American. Finally, Plaintiff asserts that she is disabled, stating only that she was permanently injured by a student's unspecified "action." She fails to specify what her disability is, or how it impacts upon her ability to do her job. Nevertheless, given the relaxed pleading standard for a pro se plaintiff, the Court will take Plaintiff's allegations of disability as true, and assume that she falls under the protection of the ADEA.

12.  Plaintiff asserts that Defendants discriminated against her, but there are no factual allegations suggesting that the alleged mistreatment was due to Plaintiff's age, race, or disability. "'Simply stating that one endured [] discrimination without presenting allegations suggestive of such conduct does not meet our pleading standards.'" Deserne v. Madlyn & Leonard Abramson Ctr. For Jewish Life, Inc., No. 10-

03694, 2011 WL 605699, at *2 (E.D. Pa. Feb. 16, 2011) (quoting
Funayama v. Nichia Am. Corp., No. 08-5599, 2009 WL 1437656 at *5
(E.D. Pa. May 21, 2009)). Plaintiff essentially states in the
Complaint that she is disabled and then notes that Silverstein
suspended her and ignored her complaints of bullying and
harassment. However, even construing Plaintiff's Complaint
liberally, the Court can discern no facts which would suggest
that Silverstein's conduct was motivated by some discriminatory
animus. Indeed, in the same paragraph where she alleges that her
suspension was due to discrimination, Plaintiff asserts that
Silverstein told her that she was "erratic and ranting." She
also alleges that the suspension came after Sneathen allegedly
threatened her, but Plaintiff then appears to admit that she
"had fabricated a few things." (Am. Compl. ¶ 20.) Thus, from
Plaintiff's own allegations, it appears that Silverstein's
actions were due to Plaintiff's behavior, as well as a conflict
with another teacher, and not Plaintiff's race, age, or
disability.

13.  Plaintiff also notes an incident with a toy gun and a
threat from the son of a Glassboro School District employee,
stating that although Silverstein knew of the incidents, he
failed to act. But even here, there are no allegations which
would support an inference of a causal connection between
Plaintiff's protected status and Silverstein's alleged inaction.

10

The remaining vague assertions of bullying, harassment, and threats in Plaintiff's Complaint, which Plaintiff alleges Silverstein ignored, are much too generalized to withstand a motion to dismiss. The accusations are unaccompanied by any facts describing specific incidents, and are wholly insufficient to put a defendant on fair notice of the grounds upon which Plaintiff's discrimination claims rest. See Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).

14. Finally, Plaintiff alleges that Silverstein made certain offensive comments regarding African Americans in a Power Point presentation at some point during his tenure. This incident appears unconnected to any of the other incidents asserted in Plaintiff's Complaint, nor does it state a claim for a hostile work environment when combined with Plaintiff's other allegations. The "sine qua non of a hostile work environment claim is a 'workplace . . . permeated with *discriminatory* intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment[.]'" McKinnon v. Gonzales, 642 F. Supp. 2d 410, 421 (D.N.J. 2009) (quoting Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 116 (2002)). Even taking all of Plaintiff's allegations together, the few factually specific allegations of hostility, over Plaintiff's course of employment, fall far short of the level of "pervasive

11

discriminatory hostility" necessary to ground a hostile work environment claim. Id. at 423; see also Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1998) (noting that "the sporadic use of abusive language, gender-related jokes, and occasional teasing" do not give rise to liability under Title VII."); Feeney v. Jeffries & Co., Inc., No. 09-cv-2709, 2010 WL 2629065, at *2 (D.N.J. June 28, 2010) (dismissing hostile work environment claim even though plaintiff asserted that supervisor "continually harassed, verbally abused, and discriminated against" plaintiff, told plaintiff he was "lucky to have this job because of his Irish ancestry," and called him a derogatory name related to his ancestry during a meeting.) In the present case, the Amended Complaint does not allege that Defendants made racial insults or derogatory comments directed at Plaintiff because of her race.

15.  With respect to Defendant Danielle Sneathen, the Title VII, ADEA, and ADA claims lack even more factual support. Plaintiff provides few facts to explain what happened between Sneathen and Plaintiff in May of 2014 that ultimately led to Silverstein's decision to suspend Plaintiff from the school. She alleges only that Sneathen threatened Plaintiff and nothing more. Not only has Plaintiff failed to show discriminatory animus, she has also failed to demonstrate that the adverse employment action – here, Plaintiff's suspension – can be traced

12

to Sneathen. Plaintiff has failed to plead a sufficient cause of action under Title VII, the ADA, and the ADEA, and the Court will dismiss her Complaint under Fed. R. Civ. P. Rule 12(b).

16.  Even if Plaintiff could state a plausible cause of action, her claims must be dismissed because she has not alleged exhaustion of her administrative remedies. A plaintiff filing claims under Title VII and the ADA must first exhaust her administrative remedies before the Equal Employment Opportunity Commission before seeking judicial review. See 42 U.S.C. § 2000e-5(e)(1); 42 U.S.C. § 12117(a) (adopting the enforcement scheme from Title VII); see also Williams v. East Orange Community Charter Sch., 396 Fed. App'x 895 (3d Cir. 2010); Burgh v. Borough Council of Borough of Montrose, 251 F.3d 465, 469-70 (3d Cir. 2001) (discussing administrative remedy requirements under Title VII and noting that a complainant "may not bring a Title VII suit without having first received a right-to-sue letter" from the EEOC); Spence v. Straw, 54 F.3d 196, 200 (3d Cir. 1995) (noting that "when Title VII remedies are available, they must be exhausted before a plaintiff may file suit."). The ADEA has a similar exhaustion requirement, and provides that "[n]o civil action may be commenced . . . until 60 days after a charge alleging unlawful discrimination has been filed with the [EEOC]." 29 U.S.C. § 626(d)(1); see also Serendinski v. Clifton Precision Prods. Co., 776 F.2d 56, 62-63 (3d Cir. 1985) (noting

that the ADEA creates a private right of action but, "[a]s in the case of Title VII, suits by the EEOC are the preferred enforcement mechanism" and a complainant must file a charge with the EEOC before commencing suit).

17.   Under Title VII's scheme, a charge of race discrimination in employment must be filed with the EEOC within 180 days of the occurrence of the alleged unlawful employment practice, and the plaintiff must bring a private action within 90 days of receiving a right-to-sue letter from the EEOC. Burgh, 251 F.3d at 469. The ADEA likewise requires a charge of discrimination to be filed with the EEOC within 180 days. Moreover, any suit based on a charge dismissed by the EEOC must be brought within 90 days of notice of the dismissal. 29 U.S.C. §§ 626(d)(1)(A); 29 U.S.C. § 626(e). These deadlines function as a statute of limitations, and once expired, generally bar a plaintiff from seeking judicial review. See Irwin v. Dep't of Veterans Affairs, 498 U.S. 89, 95 (1990); Winder v. Postmaster Gen. of U.S., 528 F. App'x 253, 255 (3d Cir. 2013) (noting that the failure to bring a claim within the EEO limitations period generally bars relief); Hill v. U.S. Gen. Servs. Admin., No. 05-2092, 2008 WL 4371761, at *4 (D.N.J. Sept. 17, 2008) (barring untimely EEO complaints).

18.   There are no facts in Plaintiff's Complaint to suggest that she took the required administrative action with the EEOC

14

before filing the instant suit. She asserts only that she filed
a complaint with the Glassboro Police in the municipal building
after her suspension, but nowhere does she suggest that she
complained to her local EEO office or representative. Nor does
she claim that her administrative remedies have been exhausted.
Accordingly, the Court finds that Plaintiff's claims have not
been exhausted, and the time for such exhaustion has long since
expired. See 42 U.S.C. § 2000e-5(e)(1) (providing, in relevant
part, that a claim of discrimination must be filed within 300
days after the allegedly unlawful employment practice occurred);
Amtrak v. Morgan, 536 U.S. 101, 108-09 (2002) (noting that a
"claim is time barred if it is not filed within [this] time
limit").

19.  The Court will dismiss Plaintiff's Amended Complaint
with prejudice. Because Plaintiff is out of time to exhaust her
administrative remedies before the EEOC, her suit is barred from
filing in federal court. Given this deficiency, the Court finds
no prospect that Plaintiff could amend her Complaint to assert
plausible claims for relief. Moreover, the Court notes that
Defendants in their first motion to dismiss have point out once
already why Plaintiff's allegations were insufficient [see
generally Docket Item 22], and Plaintiff's amended pleading has
utterly failed to cure the deficiencies that Defendants
highlighted. Plaintiff's new allegations are just as vague and

15

contain no new facts to make her assertions of discrimination any more plausible.

20.   Accordingly, Defendants' motion to dismiss for failure to state a claim will be granted, and Plaintiff's Complaint against Defendants will be dismissed with prejudice.

21.   An accompanying Order will be entered.

**March 31, 2016**                           **s/ Jerome B. Simandle**
Date                                          JEROME B. SIMANDLE
                                             Chief U.S. District Judge

16